## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.P. and C.P.-1**

**No. 17-1129** (Raleigh County 2017-JA-46 and 47)

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.P.-2, by counsel Stanley I. Selden, appeals the Circuit Court of Raleigh County's October 20, 2017, order terminating her parental rights to A.P. and C.P.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Thad A. Bowyer, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in not ruling on her motion for a post-adjudicatory improvement period, terminating her parental rights when she did not have effective assistance of counsel, and not employing a less-restrictive dispositional alternative than termination.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 22, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner and the father engaged in domestic violence in the children's presence. The children disclosed to a Child Protective Services ("CPS") worker that their parents argue and fight and that they were scared at times during the fights. Petitioner disclosed to the CPS worker that she and the father engaged in domestic violence. She further explained that the fights scare the children and that "her son holds his hands over his ears yelling '[d]addy[,] stop it.'" Petitioner also disclosed that she used multiple illegal substances in the past and that she and the father continued to smoke marijuana. On March 8, 2017, the circuit court held a preliminary hearing,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner have the same initials, they will be referred to as C.P.-1 and C.P.-2, respectively, throughout this memorandum decision.

which petitioner and the father both waived. The circuit court ordered both parents to undergo psychological testing including a substance abuse evaluation.

On April 26, 2017, the circuit court held an adjudicatory hearing. A CPS worker testified that when she met with the parents on February 3, 2017, prior to the filing of the petition, petitioner admitted to past substance abuse and that she and the father continued to smoke marijuana. She explained that, while petitioner initially agreed to drug screen on that day, the father refused and both parents subsequently left. Since that interaction, petitioner tested positive for marijuana and one of the screens showed high levels of creatinine, which indicates that a substance was taken to disguise the drug screen. The CPS worker testified regarding petitioner's admissions of domestic violence between her and the father. According to the CPS worker, petitioner indicated that the children were afraid during the instances of domestic violence. The CPS worker testified that she attempted to have conversations with the father on February 3, 2017, but he refused to cooperate, denied all allegations of abuse and neglect, and left abruptly. She also stated that on this day, the father appeared to be under the influence and acted "hyper" and "high strung." The CPS worker further explained that both parents were cooperative at a multidisciplinary treatment team meeting at a later date. On cross-examination, the CPS worker testified regarding a January 27, 2017, incident wherein police responded to domestic violence between petitioner and the father. She testified that, according to the police report, petitioner told the police that the father hit her with a flashlight and smacked her. She testified that she was not aware of any domestic violence directed towards the children. Upon cross-examination by the guardian, the CPS worker explained that her February 3, 2017, meeting with the parents was in response to a call to a different CPS worker regarding the children's fear of their father. A protection plan was implemented following that call.

Petitioner testified regarding the domestic violence incident wherein the police were called. She explained that she believed that the children were at their aunt's house, but her son was actually on the porch yelling at his parents to "just quit" fighting. She also admitted to smoking marijuana daily, but stated that she had been clean from other substances for three years. She further explained that she self-medicated with marijuana and that the father self-medicated his attention deficit hyperactivity disorder with marijuana. She stated that the father was never violent and never hit her. She continued to explain away the January 27, 2017, incident and stated that it arose from neighbors threatening the children. She stated that she and the father were very mad and that she eventually calmed down, but the father remained upset. According to petitioner, the father did not hit her with a flashlight or smack her, but she pushed the father away from his truck as he made threats toward the neighbors. On cross-examination petitioner explained that the children did not live in the home, but at their aunt's house approximately 150 feet away, and that they do visit petitioner and the father during the day and spend the night on occasion. The circuit court ordered petitioner and the father to drug screen immediately following the hearing. The father, however, was incapable of providing a specimen for a drug screen, and petitioner refused to screen. Both screens were deemed administrative positives. Thereafter, the circuit court entered an order on April 28, 2017, adjudicating petitioner and the father as abusing parents.

The record indicates that the DHHR arranged transportation to drug screenings for petitioner and the father. However, on September 21, 2017, the CPS worker reported that when

2

she arrived to the parents' home, the father's mother informed her that petitioner and the father had just left. On September 26, 2017, the CPS worker took only petitioner to drug screen. According to the guardian's report, on August 24, 2017, criminal charges were filed against the father for domestic violence and family members reported that domestic violence between petitioner and the father continued to be an issue. The guardian further reported that the parents failed to attend the psychological evaluation and substance abuse assessment, have any visitation with the children since April of 2017, nor submit to drug screens as ordered by the circuit court. The record indicates that petitioner was aware of the scheduled psychological evaluation because she called to reschedule after missing the first appointment, but still did not attend after she rescheduled. The guardian recommended termination of the parents' parental rights to the children.

On October 18, 2017, the circuit court held a dispositional hearing. Neither petitioner nor the father attended the hearing, but both were represented by counsel. Counsel for petitioner informed the circuit court that he called petitioner to remind her of the dispositional hearing and left a message prior to the hearing. Petitioner's name was called three times before proceeding with the hearing. The DHHR presented both parents' drug screen results which indicated that petitioner missed seven out of ten drug screens, along with one screen's results pending, one positive screen for marijuana, and one diluted screen. The father missed eight out of ten drug screens. The circuit court found that the parents "have done nothing to try and correct the abuse and neglect that took place in this case, and they've done nothing to exercise the rights that parents normally exercise." The circuit court further found no reasonable likelihood that petitioner or the father could substantially correct the conditions of abuse and neglect in the near future and that termination of their parental rights was in the children's best interests. The circuit court ultimately terminated petitioner's parental rights in its October 20, 2017, order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2] The father's parental rights were also terminated. According to the parties, the permanency plan for the children is adoption by their paternal great-aunt and uncle.

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in not ruling on her motion for a post-adjudicatory improvement period.[3] Pursuant to West Virginia Code § 49-4-610(2),

> a court may grant a [parent] an improvement period of a period not to exceed six months when: (A) The [parent] files a written motion requesting the improvement period; (B) The [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period[.]

Although petitioner met the first requirement for consideration of a post-adjudicatory improvement period by filing a written motion, the burden was on her to prove that she was likely to fully participate in the improvement period. Petitioner failed to meet this burden because she failed to comply with the circuit court's orders to participate in psychological testing, a substance abuse evaluation, and drug screens, and admittedly continued to smoke marijuana during the proceedings. Evidence was also presented at the dispositional hearing that petitioner missed seven out of ten drug screens during the proceedings and failed to visit with the children after April of 2017, due to her failure to drug screen. The record further shows that domestic violence between petitioner and the father continued to be a problem throughout the proceedings, despite petitioner's denial that it was a reoccurring issue. Therefore, petitioner did not meet her burden to receive a post-adjudicatory improvement period, and the circuit court did not err in not granting her the same.

Next, petitioner argues that the circuit court erred in terminating her parental rights when she did not have effective assistance of counsel. It is important to note that this Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding, and we decline to do so here, especially in light of the fact that, under the limited circumstances of this case, petitioner's counsel provided her with effective representation below. In support of her argument, petitioner alleges that counsel failed to inform her of any appointments or hearings. However, petitioner attended all hearings except for the dispositional hearing.[4]

---

[3]Petitioner argues that pursuant to *In re Thaxton*, 172 W.Va. 429, 429, 307 S.E.2d 465, 465 (1983), the circuit court must state what compelling circumstances warrant the denial of an improvement period. However, in 1996, the West Virginia Legislature revised Section 49 of the West Virginia Code to remove the "compelling circumstances" requirement for improvement periods set forth in West Virginia Code § 49-6-2(b) and replaced it with West Virginia Code § 49-6-12, which was later recodified in 2015. Currently, West Virginia Code § 49-4-610 governs improvement periods in abuse and neglect proceedings and places the burden on the parent to prove that she is likely to fully participate in the improvement period. As discussed above, petitioner did not meet the burden.

[4]Petitioner also alleges that a caseworker gave her the wrong time for the dispositional hearing. However, petitioner does not support this assertion with any evidence from the record. In fact, the caseworker appeared at the dispositional hearing at the correct time.

In regard to disposition, the record shows that counsel attempted to contact petitioner but could not reach her. In short, petitioner fails to make any citations to the record regarding her difficulties in contacting counsel. Although unrelated to her ineffective assistance of counsel claim, petitioner blames a lack of transportation for her missed drug screens, but she fails to acknowledge that transportation was arranged by the DHHR and she failed to consistently take advantage of it. Petitioner also fails to cite to evidence of any effort on her behalf to contact her attorney, the DHHR, or the circuit court to inquire about appointments or hearings. Petitioner also argues that counsel "never pursued her motion for a post-adjudicatory improvement period." However, the motion itself fails to demonstrate that petitioner carried her burden for consideration of an improvement period. As discussed above, petitioner was ordered by the circuit court to participate in a psychological examination, substance abuse evaluation, and drug screens, but failed to comply. Moreover, upon a review of the record, there is no evidence that petitioner brought any of the issues regarding counsel's alleged ineffective assistance to the attention of the circuit court. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va 818, 679 S.E.2d 650 (2009).

Finally, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, petitioner failed to comply with the circuit court's orders to participate in a psychological examination, substance abuse evaluation and drug screens. Petitioner also admitted to smoking marijuana on a daily basis during the proceedings and was unable to visit her child after April of 2017 due to positive and missed drug screens. Based on this evidence, the circuit court found no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was in the children's best interests. Furthermore, while petitioner argues that the circuit court erred in terminating her parental rights instead of employing a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

5

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011).  For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 20, 2017, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  June 11, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.